**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF OREGON**

| | |
|---|---|
| **TRISTAN JUSTICE**, | Case No. 3:26-cv-01419-IM |
| Plaintiff, | **SCREENING ORDER DISMISSING COMPLAINT WITH LEAVE TO AMEND AND DENYING MOTION FOR TEMPORARY RESTRAINING ORDER** |
| v. | |
| **CENTRAL CITY CONCERN**, | |
| Defendant. | |

**IMMERGUT, District Judge.**

Before this Court is Plaintiff Tristan Justice's Application to Proceed in Forma Pauperis ("IFP App"), ECF 2, and his Motion for Temporary Restraining Order ("TRO Mot."), ECF 4. Plaintiff seeks relief against Central City Concern under the Fair Housing Act. For the reasons below, this Court grants Plaintiff's request to proceed in forma pauperis; dismisses his Complaint ("Compl."), ECF 1, without prejudice; and denies his motion for a Temporary Restraining Order.

**LEGAL STANDARDS**

A complaint filed in forma pauperis ("IFP") shall be dismissed at any time if the court determines that the action "(i) is frivolous or malicious; (ii) fails to state a claim on which relief

PAGE 1 – SCREENING ORDER

may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2). To state a claim upon which relief can be granted, a complaint must "plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). In evaluating the sufficiency of a complaint, the court must accept as true all well-pleaded material facts in the complaint and construe them in the light most favorable to the plaintiff. *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010). The court need not, however, credit the plaintiff's legal conclusions that are couched as factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citation omitted). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Mashiri v. Epsten Grinnell & Howell*, 845 F.3d 984, 988 (9th Cir. 2017) (citation modified) (quoting *Iqbal*, 556 U.S. at 678).

Where a Complaint incorporates exhibits by reference, the Court may consider those exhibits when determining if the Complaint plausibly states a claim. *Pampena v. Musk*, 705 F. Supp. 3d 1018, 1037 (N.D. Cal. 2023). "A document is incorporated by reference when the complaint 'refers extensively to the document or the document forms the basis of the plaintiff's claim.'" *Id.* (quoting *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018)).

Courts must construe pro se filing liberally but cannot supply essential elements of a claim that are not pled. *Gonzalez-Castillo v. Garland*, 47 F.4th 971, 980 (9th Cir. 2022); *Pena v. Gardner*, 976 F.2d 469, 471–72 (9th Cir. 1992) (per curiam).

PAGE 2 – SCREENING ORDER

## BACKGROUND[1]

Plaintiff Tristan Justice is a resident of Portland, Oregon and a participant in the HOPE program, a rental assistance program administered by Central City Concern ("CCC"). Compl., ECF 1 ¶ 5. CCC, an Oregon non-profit, administers "federally-funded HUD housing grants" like the HOPE program. *Id.* ¶ 6.

The HOPE Program agreement, which Justice has signed, imposes certain requirements on program participants. Exhibit C to Declaration of Tristan Justice ("Ex. C"), ECF 5-3 at 1. Specifically, it states that "[u]nder this program we will also be inspecting your housing prior to your occupancy and at least annually thereafter to assure that the unit you are residing in meets housing quality standards." *Id.* Put differently, the agreement requires program participants to allow Defendant to inspect their housing.

CCC emailed Plaintiff, stating that Plaintiff had failed both to "comply with the mandatory housing inspection" and to "sign the updated HOPE Program Agreement." *Id.* CCC sent him a written letter and email on January 8, 2026 and January 10, 2026, respectively, notifying Plaintiff of his noncompliance. *Id.* CCC sent a final warning letter and email on February 10, 2026, warning that Plaintiff that he would be "fully responsible for any late fees accrued due to non-payment of rent." *Id.*

In the subsequent months, Defendant continued following up with Plaintiff about the program requirements. On May 18, 2026, David Rugh, Defendant's HOPE Program Supervisor, emailed Plaintiff that he was out of compliance with HOPE program requirements. Exhibit A to Declaration of Tristan Justice ("Ex. A"), ECF 5-1 at 1. In response, Plaintiff explained that he

---

[1] For purposes of this screening, this Court takes the allegations of the complaint, summarized here as true. This Court also accounts for all exhibits incorporated by reference.

was "bedridden" and did not "feel safe" having someone in his home for an inspection. *Id.* at 1–2. He also expressed a general need for an accommodation without specifying what accommodation he was requesting. *Id.* Plaintiff also requested the contact information for a "HUD coordinator or contact person" to "lodge his concerns" with. *Id.* at 1. On May 19, 2026, Rugh responded with a request for a formal accommodations letter from Justice's mental healthcare provider. *Id.* at 2. Rugh added that "[i]f safety [was] a concern, having a trusted third party or friend present during inspections may help support [Plaintiff] while still allowing the program to meet its regulatory obligations." *Id.* On May 20, 2026, Plaintiff replied that he had requested an accommodation letter from his medical provider, but Plaintiff does not allege that he received a medical provider accommodation letter or that he provided one to Defendants. *Id.* at 3.

This process culminated in the termination of Justice's rental assistance. On June 11, 2026, Rugh emailed back, stating that he would be "consult[ing] with his team regarding next steps." *Id.* at 5. On July 1, 2026, Defendant emailed Plaintiff, announcing that it was "immediately discharg[ing]" him from the HOPE program. Ex. C, ECF 5-3 at 1.

Plaintiff now brings suit against CCC under the Fair Housing Act, 42 U.S.C. §§ 3601 et. seq. Compl., ECF 1 at 1, 4. He alleges claims under failure to accommodate and retaliation theories. *Id.* Separately, Plaintiff seeks a temporary restraining order to enjoin Defendant from "enforcing its July 1, 2026 'immediate discharge' notice." TRO Mot., ECF 4, at 1.

**DISCUSSION**

This Court has evaluated Plaintiff's financial affidavit, finds that he has satisfied the eligibility requirements of 28 U.S.C. § 1915(a), and therefore grants his application. This Court dismisses Plaintiff's Complaint because the Complaint fails to state either a reasonable accommodation or an interference claim. Accordingly, this Court also denies Plaintiff's request

PAGE 4 – SCREENING ORDER

for a TRO since a TRO, an equitable remedy, requires a "clear showing" of a likelihood of success on the merits. *Starbucks Corp. v. McKinney*, 602 U.S. 339, 345 (2024).

## A. Screening Pursuant to 28 U.S.C. § 1915(e)(2)

### 1. Discrimination and Failure to Accommodate

42 U.S.C. § 3604(f)(1)(A) makes it unlawful to "discriminate in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer or rent because of a handicap of [] that buyer or renter." "To make out a claim of discrimination based on failure to reasonably accommodate, a plaintiff must demonstrate that (1) [plaintiff] suffers from a handicap…; (2) defendants knew or reasonably should have known of the plaintiff's handicap; (3) accommodation of the handicap 'may be necessary' to afford plaintiff an equal opportunity to use and enjoy the dwelling; and (4) defendants refused to make such accommodation." *Giebeler v. M & B Assocs.*, 343 F.3d 1143, 1147 (9th Cir. 2003) (quoting *United States v. California Mobile Home Park Mgmt. Co.*, 107 F.3d 1374, 1380 (9th Cir. 1997)).[2] "[O]nly 'reasonable' accommodations are required[.]" *Giebeler*, 343 F.3d at 1148 (citing 42 U.S.C. § 3604(f)(3)(B)). "Ordinarily, an accommodation is reasonable . . . 'when it imposes no fundamental alteration in the nature of the program or undue financial or administrative burdens.'" *Id.* at 1157 (citation modified).

Here, Plaintiff fails to allege a plausible reasonable accommodation claim. The Complaint alleges that Defendant refused "to make reasonable accommodations in rules, policies, or services," but nowhere describes with specificity the accommodations that Defendant should have offered. Compl., ECF 1 ¶ 16. In addition, Plaintiff fails to plead why the

---

[2] *Giebeler* references the Fair Housing Amendments Act (FHAA), 42 U.S.C. § 3601 et seq. (1995), the modern iteration of the Fair Housing Act. For brevity, this Order uses the term, Fair Housing Act, throughout.

accommodation CCC offered, having a "trusted" third person present for inspections, was not reasonable. Ex. A, ECF 5-1 at 2. And absent a reason that that offer was unreasonable, Plaintiff cannot allege that Defendant has not met its obligations under the Fair Housing Act. Accordingly, this Court must dismiss Plaintiff's reasonable accommodations claim.

### 2. Retaliation

42 U.S.C. § 3617 makes it unlawful to interfere "with any person in the exercise of" their rights under the Fair Housing Act.  To state a Fair Housing Act retaliation claim, "a plaintiff must allege facts showing (1) the plaintiff was engaged in protected activity, (2) the plaintiff suffered an adverse action, and (3) there was a causal link between the two." *Johnson v. Simonson*, No. 3:23-cv-01561-YY, 2025 WL 2770517, at *6 (D. Or. Sept. 29, 2025) (citing *Brown v. City of Tucson*, 336 F.3d 1181, 1192 (9th Cir. 2003)).

Here, Plaintiff fails to plead the necessary causal link between the exercise of his rights and retaliatory action. Plaintiff claims that he asserted his "civil rights" and requested "a HUD complaint coordinator and a disability accommodation" in May 2026. Compl., ECF 1 ¶ 20. Then, on June 11, 2026, Rugh stated that he would be "consult[ing] with his team regarding next steps." Ex. A, ECF 5-1 at 5. And, on July 1, Plaintiff's housing subsidy was terminated. Ex. C, ECF 5-3 at 1. Offering a "temporal proximity" argument, Plaintiff urges this Court to infer a "causal link of unlawful retaliation." Compl., ECF 1 ¶ 22.

This Court is unpersuaded. To start, this Court generally "does not infer alleged retaliation was motivated by prior events solely on the basis of a chronology of events." *Ortiz v. Mull*, No. 2:25-cv-0028-DC-CKD (PS), 2026 WL 1284222, at *2 (E.D. Cal. May 11, 2026); *see generally Huskey v. City of San Jose*, 204 F.3d 893, 899 (9th Cir. 2000) (rejecting "the logical fallacy of *post hoc, ergo propter hoc*, literally, 'after this, therefore because of this'"). This case is no exception; indeed, any temporal proximity argument is particularly implausible because the

PAGE 6 – SCREENING ORDER

alleged effect preceded the alleged cause. The alleged adverse action, the cutting off of rental assistance, began in January and February 2026 with warnings about the need for Defendants to inspect the apartment in order to maintain funding, and preceded by months the alleged protected activity in May. Ex. C, ECF 5-3 at 1. So here, the adverse action occurred *before* the protected activity, and temporal proximity does not provide a basis for this Court to reasonably infer a causal link.

### 3.  Leave to Amend

This Court will therefore dismiss Plaintiff's Complaint with leave to amend. *See Rosati v. Igbinoso*, 791 F.3d 1037, 1039 (9th Cir. 2015) (per curiam) (citation modified) ("A district court should not dismiss a pro se complaint without leave to amend unless it is absolutely clear that the deficiencies of the complaint could not be cured by amendment."). Plaintiff may file an amended complaint within twenty-one days.

## B.  Motion for Temporary Restraining Order

A Temporary Restraining Order ("TRO") is an "extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008); *see Kindred v. Bigot,* 727 F. App'x 427, 427 (9th Cir. 2018) (unpublished) (citing *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001)) (explaining that the standards for a TRO and a PI are "substantially identical"). To succeed on a motion for a TRO, a party must make a "clear showing" that "he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Starbucks Corp.*, 602 U.S. at 345 (quoting *Winter*, 555 U.S. at 20). If a plaintiff is unlikely to succeed on the merits, the court need not consider the remaining *Winter* factors. *Babaria v. Blinken*, 87 F.4th 963, 980 (9th Cir. 2023). Because this Court concludes that the Complaint has failed to state a claim upon which relief can be granted,

PAGE 7 – SCREENING ORDER

it also concludes that Plaintiff has failed to provide the necessary showing of a likelihood of success on the merits. Plaintiff's Emergency Motion for Temporary Restraining Order, ECF 4, is therefore denied, but Plaintiff has leave to reinstate it if appropriate.

## CONCLUSION

Plaintiff's application for leave to proceed in forma pauperis, ECF 2, is GRANTED. Plaintiff's Complaint, ECF 1, is DISMISSED with leave to amend. Plaintiff's Emergency Motion for Temporary Restraining Order, ECF 4, is DENIED with leave to reinstate if appropriate. Plaintiff may amend his Complaint in accordance with this order within twenty-one (21) days and no later than August 6, 2026. Plaintiff's failure to timely amend the Complaint will result in this case being dismissed with prejudice.

**IT IS SO ORDERED.**

DATED this 16th day of July, 2026.

/s/ Karin J. Immergut
Karin J. Immergut
United States District Judge

PAGE 8 – SCREENING ORDER