# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

| | |
|---|---|
| TRISTAN JUSTICE, | Case No. 3:26-cv-01419-IM |
| Plaintiff, | **SCREENING ORDER DISMISSING PLAINTIFF'S COMPLAINT WITH LEAVE TO AMEND AND DENYING MOTION FOR A TEMPORARY RESTRAINING ORDER AND A PRELIMINARY INJUNCTION** |
| v. | |
| CENTRAL CITY CONCERN, | |
| Defendant. | |

**IMMERGUT, District Judge.**

Before this Court is Plaintiff Tristan Justice's First Amended Complaint ("Amended Compl."), ECF 10, and his Amended Motion for Temporary Restraining Order and for a Preliminary Injunction ("TRO/PI Mot."), ECF 11. Plaintiff seeks relief against Central City Concern under the Fair Housing Act. For the reasons below, this Court dismisses Plaintiff's Complaint without prejudice and denies his motion for a Temporary Restraining Order and for a Preliminary Injunction.

PAGE 1 – SCREENING ORDER

## LEGAL STANDARDS

A complaint filed in forma pauperis ("IFP") shall be dismissed at any time if the court determines that the action "(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2). To state a claim upon which relief can be granted, a complaint must "plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). In evaluating the sufficiency of a complaint, the court must accept as true all well-pleaded material facts in the complaint and construe them in the light most favorable to the plaintiff. *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010). The court need not, however, credit the plaintiff's legal conclusions that are couched as factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citation omitted). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Mashiri v. Epsten Grinnell & Howell*, 845 F.3d 984, 988 (9th Cir. 2017) (citation modified) (quoting *Iqbal*, 556 U.S. at 678).

Where a Complaint incorporates exhibits by reference, the Court may consider those exhibits when determining if the Complaint plausibly states a claim. *Pampena v. Musk*, 705 F. Supp. 3d 1018, 1037 (N.D. Cal. 2023). "A document is incorporated by reference when the complaint 'refers extensively to the document or the document forms the basis of the plaintiff's claim.'" *Id.* (quoting *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018)).

PAGE 2 – SCREENING ORDER

Courts must construe pro se filing liberally but cannot supply essential elements of a claim that are not pled. *Gonzalez-Castillo v. Garland*, 47 F.4th 971, 980 (9th Cir. 2022); *Pena v. Gardner*, 976 F.2d 469, 471–72 (9th Cir. 1992) (per curiam).

## BACKGROUND[1]

Plaintiff Tristan Justice is a resident of Portland, Oregon and a participant in the HOPE program, a rental assistance program administered by Central City Concern ("CCC"). Amended Compl., ECF 10 ¶ 5. CCC, an Oregon non-profit, administers "federally-funded HUD housing grants" like the HOPE program. *Id.* ¶ 6.

The HOPE Program agreement, which Justice has signed, imposes certain requirements on program participants. Exhibit C to Declaration of Tristan Justice ("Ex. C"), ECF 11-4 at 1. Specifically, it states that "[u]nder this program we will also be inspecting your housing prior to your occupancy and at least annually thereafter to assure that the unit you are residing in meets housing quality standards." *Id.* Put differently, the agreement requires program participants to allow Defendant to inspect their housing.

CCC emailed Plaintiff, stating that Plaintiff had failed both to "comply with the mandatory housing inspection" and to "sign the updated HOPE Program Agreement." *Id.* CCC sent him a written letter and email on January 8, 2026 and January 10, 2026, respectively, notifying Plaintiff of his noncompliance. *Id.* CCC sent a final warning letter and email on February 10, 2026, warning that Plaintiff that he would be "fully responsible for any late fees accrued due to non-payment of rent." *Id.*

---

[1] For purposes of this screening, this Court takes the allegations of the complaint, summarized here as true. This Court also accounts for all exhibits incorporated by reference.

In the subsequent months, Defendant continued following up with Plaintiff about the program requirements. On May 18, 2026, David Rugh, Defendant's HOPE Program Supervisor, emailed Plaintiff that he was out of compliance with HOPE program requirements. Exhibit A to Declaration of Tristan Justice ("Ex. A"), ECF 11-2 at 1. In response, Plaintiff explained that he was "bedridden" and did not "feel safe" having someone in his home for an inspection. *Id.* at 1–2. He also expressed a general need for an accommodation without specifying what accommodation he was requesting. *Id.* Plaintiff also requested the contact information for a "HUD coordinator or contact person" to "lodge his concerns" with. *Id.* at 1. On May 19, 2026, Rugh responded with a request for a formal accommodations letter from Justice's mental healthcare provider. *Id.* at 2. Rugh added that "[i]f safety [was] a concern, having a trusted third party or friend present during inspections may help support [Plaintiff] while still allowing the program to meet its regulatory obligations." *Id.* On May 20, 2026, Plaintiff replied that he had requested an accommodation letter from his medical provider, but Plaintiff does not allege that he received a medical provider accommodation letter or that he provided one to Defendants. *Id.* at 3.

This process culminated in the termination of Justice's rental assistance. On June 11, 2026, Rugh emailed back, stating that he would be "consult[ing] with his team regarding next steps." *Id.* at 5. On July 1, 2026, Defendant emailed Plaintiff, announcing that it was "immediately discharg[ing]" him from the HOPE program. Ex. C, ECF 11-4 at 1.

On July 10, 2026, Plaintiff brought suit against CCC under the Fair Housing Act, 42 U.S.C. §§ 3601 et. seq. Complaint, ECF 1 at 1, 4. He alleged claims under failure to accommodate and retaliation/interference theories. *Id.* He also sought a temporary restraining order to enjoin Defendant from "enforcing its July 1, 2026 'immediate discharge' notice."

PAGE 4 – SCREENING ORDER

Motion for Temporary Restraining Order, ECF 4, at 1. In its Screening Order, this Court denied both motions, but granted Plaintiff leave to amend the Complaint and to reinstate the TRO motion if appropriate. Order Screening Complaint, Denying TRO ("Screening Order"), ECF 9 at 8.

Plaintiff now brings an Amended Complaint as well as an Amended Motion for a Temporary Restraining Order and For a Preliminary Injunction. *See* Amended Compl., ECF 10; TRO/PI Mot., ECF 11. He continues to allege claims under failure to accommodate and retaliation/interference theories. *Id.* For the former theory, he offers two proposed accommodations that he alleges that CCC should have considered: 1) that Plaintiff's landlord provide "compliance certification and habitability forms…directly to Defendant" and 2) that Defendant conduct a "remote, virtual, or video-assisted inspection." Amended Compl., ECF 10 at 7–8. For the latter theory, Plaintiff seeks to clarify the eviction timeline by alleging that he brought complaints in 2025 before any adverse action. *Id.* at 4. Finally, Plaintiff seeks the same injunctive relief as before. *Id.* at 12.

## DISCUSSION

This Court dismisses Plaintiff's Complaint because the Complaint fails to state either a reasonable accommodation or an interference claim. Accordingly, this Court also denies Plaintiff's request for a TRO or a PI since both are equitable remedies that require a "clear showing" of a likelihood of success on the merits. *Starbucks Corp. v. McKinney*, 602 U.S. 339, 345 (2024).

### A.  Screening Pursuant to 28 U.S.C. § 1915(e)(2)

#### 1.  Discrimination and Failure to Accommodate

42 U.S.C. § 3604(f)(1)(A) makes it unlawful to "discriminate in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer or rent because of a handicap of []

PAGE 5 – SCREENING ORDER

that buyer or renter." "To make out a claim of discrimination based on failure to reasonably accommodate, a plaintiff must demonstrate that (1) [plaintiff] suffers from a handicap…; (2) defendants knew or reasonably should have known of the plaintiff's handicap; (3) accommodation of the handicap 'may be necessary' to afford plaintiff an equal opportunity to use and enjoy the dwelling; and (4) defendants refused to make such accommodation." *Giebeler v. M & B Assocs.*, 343 F.3d 1143, 1147 (9th Cir. 2003) (quoting *United States v. California Mobile Home Park Mgmt. Co.*, 107 F.3d 1374, 1380 (9th Cir. 1997)).[2] "[O]nly 'reasonable' accommodations are required[.]" *Giebeler*, 343 F.3d at 1148 (citing 42 U.S.C. § 3604(f)(3)(B)). "Ordinarily, an accommodation is reasonable . . . 'when it imposes no fundamental alteration in the nature of the program or undue financial or administrative burdens.'" *Id.* at 1157 (citation modified).

Here, Plaintiff alleges that he was denied two alternative, reasonable accommodations: 1) Defendant receiving compliance paperwork from building management and 2) a "remote, virtual, or video-assisted inspection." Amended Compl., ECF 10 at 7–8. Plaintiff's reasonable accommodation claim is not plausible for two independent reasons.

First, Plaintiff's requested accommodations are "patently unreasonable because if granted, [they] would violate federal regulations." *Doe v. Hous. Auth. of Portland,* No. 3:13-cv-1974-SI, 2015 WL 758991, at *6 (D. Or. Feb. 23, 2015). Plaintiff's own exhibits demonstrate that Plaintiff agreed to the HOPE Program Agreement, which required annual inspections. Ex. C, ECF 11-4 at 1 ("'Under this program we will also be inspecting your housing prior to your occupancy and at least annually thereafter to assure that the unit you are residing in meets

---

[2] *Giebeler* references the Fair Housing Amendments Act (FHAA), 42 U.S.C. § 3601 et seq. (1995), the modern iteration of the Fair Housing Act. For brevity, this Order uses the term, Fair Housing Act, throughout.

housing quality standards'"). Plaintiff's own exhibits also demonstrate that HUD regulations required those inspections. *See* Ex. A, ECF 11-2 at 1. And those inspections plainly needed to be in-person as any other approach would "fundamentally alter[]" the program and "potentially endanger[] the health and safety of the tenant being inspected and the remaining residents of the building." *Doe*, 2015 WL 758991, at *6. Given the need for an in-person inspection, Plaintiff's two proposed accommodations–1) Plaintiff's landlord providing compliance paperwork to Defendant and 2) a virtual inspection–were not reasonable.

Second, denying Plaintiff's requested accommodation "did not deny Plaintiff the equal opportunity to enjoy the housing of [his] choice." *Doe*, 2015 WL 758991, at *7. Plaintiff fails to allege why Defendant's proposed accommodation, having a "trusted" third person present for inspections, would not vindicate Plaintiff's FHA-protected rights. Ex. A, ECF 11-2 at 2. While this Court can certainly understand why "an inspection may be stressful for and even upsetting to Plaintiff," it does not follow that he was denied the "equal opportunity" protected by the FHA. *Doe*, 2015 WL 758991, at *7.

Plaintiff's alleged deficiencies with Defendant's proposed accommodation do not suffice. Plaintiff contends that "[t]he presence of a third-party friend does absolutely nothing to cure…the severe physiological trauma, agoraphobic panic spikes, and localized trauma responses caused by unfamiliar program workers entering the private bedroom of an immobilized, bedridden mental health patient." Amended Compl., ECF 10 ¶ 23. But, Plaintiff fails to identify specific factual material to explain why the nature of Plaintiff's disability means that the presence of a third-party friend at an inspection would not resolve Plaintiff's safety-related concerns. *Cf. Horman v. Sunbelt Rentals Inc.*, No. C20-564 TSZ, 2020 WL 4366185, at *7 (W.D. Wash. July 30, 2020) (holding that even at the pleading stage, "bare and conclusory

PAGE 7 – SCREENING ORDER

allegations of emotional distress unsupported by factual detail" do not suffice). And, absent such specific facts, Plaintiff's allegation that Defendant's proposed accommodation is inadequate does not rise above "labels and conclusions" to state a plausible reasonable accommodation claim. *Twombly*, 550 U.S. at 555.

### 2. Retaliation

42 U.S.C. § 3617 makes it unlawful to interfere "with any person in the exercise of" their rights under the Fair Housing Act. To state a Fair Housing Act retaliation claim, "a plaintiff must allege facts showing (1) the plaintiff was engaged in protected activity, (2) the plaintiff suffered an adverse action, and (3) there was a causal link between the two." *Johnson v. Simonson*, No. 3:23-cv-01561-YY, 2025 WL 2770517, at *6 (D. Or. Sept. 29, 2025) (citing *Brown v. City of Tucson*, 336 F.3d 1181, 1192 (9th Cir. 2003)).

Here, Plaintiff's Amended Complaint does not overcome the deficiencies identified previously. In its prior screening order, ECF 9, this Court dismissed the interference claim for two key reasons. Screening Order, ECF 9 at 6–7. First, this Court refused to "infer alleged retaliation was motivated by prior events solely on the basis of a chronology of events." *Ortiz v. Mull*, No. 2:25-cv-0028-DC-CKD (PS), 2026 WL 1284222, at *2 (E.D. Cal. May 11, 2026). Second, this Court reasoned that the adverse action occurred *before* the protected activity, and temporal proximity was therefore not a basis to reasonably infer a causal link. Screening Order, ECF 9 at 6–7. That was so because the alleged adverse action, the cutting off of rental assistance, began in January and February 2026 with warnings about the need for Defendants to inspect the apartment to maintain funding, and preceded by months the alleged protected activity in May. *Id.*

Plaintiff unsuccessfully attempts to cure these deficiencies. To avoid the problem of the adverse action preceding the protected activities, Plaintiff seeks to clarify "the adverse action and eviction timeline." Amended Compl., ECF 10 at 4. Specifically, Plaintiff alleges that the "early

PAGE 8 – SCREENING ORDER

2026" cut-off of rental assistance was itself preceded by complaints "throughout 2025." *Id.* ¶ 9. And, with those 2025 complaints in view, it supposedly becomes clear that the protected activity in question, the making of complaints, preceded any adverse action all along. *Id.*

The problem for Plaintiff, however, is that the Amended Complaint lacks sufficient "factual material" regarding those 2025 complaints to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Nowhere in Plaintiff's Amended Complaint does he explain what those 2025 complaints were with any amount of detail. *See, e.g.*, Amended Compl., ECF 11 at 3 (referring to "hostile administrative treatment in 2025 where Defendant actively blocked Plaintiff from moving units until Plaintiff asserted his civil rights"); *id.* at 4 (alleging "a series of formal housing safety and civil rights complaints"); *id.* at 9 (similar); *id.* at 12 (similar). And, absent such details, this Court cannot say that Defendant has received "fair notice" of the grounds for relief. *Twombly*, 550 U.S. at 561. Accordingly, because Plaintiff does not offer sufficient factual allegations regarding these 2025 complaints, his Amended Complaint does not cure the pleading problem with his initial Complaint, the alleged adverse action preceding the alleged protected activity.[3]

### 3. Leave to Amend

This Court will therefore dismiss Plaintiff's Amended Complaint with leave to amend. *See Rosati v. Igbinoso*, 791 F.3d 1037, 1039 (9th Cir. 2015) (per curiam) (citation modified) ("A district court should not dismiss a pro se complaint without leave to amend unless it is absolutely clear that the deficiencies of the complaint could not be cured by amendment."). Although

---

[3] Plaintiff also alleges that Defendant suddenly deviated "from its 10-year history of conducting inspections strictly prior to move-in." Amended Compl., ECF 10, ¶ 34. But, Plaintiff's own exhibits have plead him out of court on that allegation as they show a pre-existing policy of annual inspections, both prior to and after move-in. Ex. C, ECF 11-4 at 1.

PAGE 9 – SCREENING ORDER

amendment may be futile, if Plaintiff believes he can cure the deficiencies in his complaint, he may file an additional amended complaint within twenty-one days.

## B.  Motion for Temporary Restraining Order and a Preliminary Injunction

Both a Temporary Restraining Order ("TRO") and a Preliminary Injunction ("PI") are "extraordinary remed[ies] never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008); *see Kindred v. Bigot,* 727 F. App'x 427, 427 (9th Cir. 2018) (unpublished) (citing *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001)) (explaining that the standards for a TRO and a PI are "substantially identical"). To succeed on a motion for a TRO or a PI, a party must make a "clear showing" that "he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Starbucks Corp.*, 602 U.S. at 345 (quoting *Winter*, 555 U.S. at 20). If a plaintiff is unlikely to succeed on the merits, the court need not consider the remaining *Winter* factors. *Babaria v. Blinken*, 87 F.4th 963, 980 (9th Cir. 2023). Because this Court concludes that the Complaint has failed to state a claim upon which relief can be granted, it also concludes that Plaintiff has failed to provide the necessary showing of a likelihood of success on the merits. Plaintiff's Amended Motion for Temporary Restraining Order and for a Preliminary Injunction, ECF 11, is therefore denied, but Plaintiff has leave to reinstate it if appropriate.

## CONCLUSION

Plaintiff's Amended Complaint, ECF 10, is DISMISSED with leave to amend. Plaintiff's Amended Motion for Temporary Restraining Order and for a Preliminary Injunction, ECF 11, is DENIED with leave to reinstate if appropriate. Plaintiff may amend his Complaint in accordance with this order within twenty-one (21) days and no later than August 12, 2026. Plaintiff's failure to timely amend the Complaint will result in this case being dismissed with prejudice.

PAGE 10 – SCREENING ORDER

**IT IS SO ORDERED.**

DATED this 22nd day of July, 2026.

/s/ Karin J. Immergut
Karin J. Immergut
United States District Judge